IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| LUCIOUSE CARTER and JUDY CARTER, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 3:10cv503-WHA-CSC |
| | ) | (WO) |
| COUNTRYWIDE HOME LOANS, INC.[1] | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

This case is before the court on a Motion to Dismiss (Doc. #4) filed by Countrywide Home Loans, Inc. ("Countrywide") on June 17, 2010. The motion came under submission on briefs on September 16, 2010.

The Plaintiffs, Luciouse and Judy Carter (the "Carters") filed a Complaint in this case in the Circuit Court of Chambers County, Alabama on May 5, 2010 bringing thirteen claims against Countrywide: overreaching (Count 1); outrage (Count 2); fraud in the inducement (Count 3); practicing law without a license (Count 4); unlawful practice of law (Count 5); unlawful conversion (Count 6); wrongful eviction (Count 7); fraud (Count 8); outrage (Count 9); fraud (Count 10); outrage (Count 11); outrage (Count 12); and misuse of public funds (Count 13). Countrywide subsequently removed this case to this court on June 10, 2010, on the basis of

---

[1]Originally, the defendants in this case were specified as "Full Spectrum Lending, Inc., and Countrywide Home Loans, Inc." However, Full Spectrum Lending was an internal division and trade name of Countrywide, and was not a separate corporate entity at any time material to this lawsuit. (Mot. to Dismiss at 1 n.1.) As a result, this Opinion will treat both Countrywide and Full Spectrum as a single entity, and the caption of this case has been modified accordingly.

diversity jurisdiction. No motion to remand was filed, and this court has subject matter jurisdiction.

For reasons to be discussed, the Motion to Dismiss is due to be GRANTED.

## II.  MOTION TO DISMISS STANDARD

The court accepts the Plaintiff's allegations as true, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), and construes the complaint in the Plaintiff's favor, *Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993). In analyzing the sufficiency of pleading, the court is guided by a two-prong approach: one, the court is not bound to accept conclusory statements of the elements of a cause of action and, two, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to entitlement to relief. *See Ashcroft v. Iqbal,* _ U.S. _,  129 S. Ct. 1937, 1949-50 (2009). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but instead the complaint must contain "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. The factual allegations "must be enough to raise a right to relief above the speculative level." *Id*. at 555.

## III.  FACTS

The allegations of the Plaintiffs' Complaint are as follows:

The Carters owned a home together in Lafayette, Alabama, subject to a mortgage. In October 2004, after watching Countrywide's television advertisement, the Carters contacted Countrywide about refinancing their home mortgage. At this time, the Carters owed approximately $38,000 to their mortgage company, and were having trouble making their monthly payments. Additionally, the Carters had a troubled financial history. They had a "history of filing for bankruptcy and poor financial management." (Compl. ¶ 13.)

Initially, Countrywide requested, and the Carters provided, information regarding the Carters' financial and credit history. After reviewing this information, Countrywide encouraged the Carters to borrow $60,000, which was $22,000 more than the payoff on the existing note and mortgage. The appraised value of the property was $80,000. The Carters agreed to do so, and on or about October 26, 2004 a person identified as a paralegal went to the Carters' home and had them sign loan documents, including a mortgage.

The Carters made their initial payments without issue. However, at some point after the parties agreed to the loan, Countrywide required that the Carters insure their property, and affixed "forced insurance" on the Carters' loan account, which increased the Carters' payments to more than the Carters could afford. (Compl. ¶ 16.) Subsequently, on or about June 2, 2005, the Carters filed for bankruptcy, under a wage earners plan, naming Countrywide as a debtor.

On or about April 26, 2006, Countrywide filed a petition with the United States Bankruptcy Court (the "Bankruptcy Court") that alleged that the Carters failed to make payments required by the bankruptcy plan from August 2005 through April 2006. However, the Carters allege that they made these payments, and that they had receipts from these payments. It is unclear whether the Carters brought this issue to the attention of the Bankruptcy Court.

On or about February 9, 2007, Countrywide told the Carters that it was going to foreclose on their home. At this time, the Carters were allegedly "current on their payments or within 30 days of being current" and "did attempt to pay their February payment which was rejected." (Compl. ¶¶ 23-24.) The Carters received no further correspondence from Countrywide until nearly a year later, February 4, 2008, when Countrywide again notified the Carters that it was going to foreclose on their home, and that the Carters could contact Countrywide or its attorney to discuss settlement or a payoff amount. Countrywide also notified the Carters that the foreclosure sale would occur on March 7, 2008. This foreclosure sale was later postponed multiple times.

Prior to demanding possession of the Carters' home, Countrywide told the Carters that "there was a program[2] under which persons who were in risk on [sic] being foreclosed on could apply for a hardship restructuring . . . and they could keep their home." (Compl. ¶ 30.) The Carters applied for this loan, supplying to Countrywide required documentation. The Carters continually contacted Countrywide about their application, but never received a clear answer from Countrywide as to its status. Once they were told that they had never submitted an application, once they were told that they were approved, and ultimately they were told that they had not qualified for the program. The Carters allege that Countrywide received funds from the "hardship program" from the United States, and used these funds for purposes other than for which the government required that they use the funds.

---

[2]The Carters' Complaint does not state the name of the program or describe any information about the program besides that it is designed for people who are in risk of being foreclosed on, and that the funds from the program are provided by the United States Government.

After Countrywide advised the Carters that they failed to qualify for the "hardship program," Countrywide made a demand for the Carters' home on May 8, 2009. Subsequently, the Carters turned over possession of their home to Countrywide.

## IV.  DISCUSSION

Countrywide moves to dismiss each count under Rule 12(b)(6) for failure to state a plausible claim for relief.

### A.     Count 1: Overreaching

In Count 1, the Carters contend that Countrywide is liable to them for "overreaching." This claim is due to be dismissed because there is no cause of action in Alabama for overreaching.

The Carters argue that a cause of action for overreaching exists based on three sources. First, the Carters point to the definition of "overreaching" in Black's Law Dictionary: "The act or an instance of taking unfair commercial advantage of another, esp. by fraudulent means." *Black's Law Dictionary*, *overreaching*, (8th ed. 2004). This is unpersuasive, as Black's Law Dictionary is not a source of legal rights in Alabama, nor does the definition identify overreaching as a cause of action. Second, the Carters cite the court to the use of overreaching in Alabama statutes and cases pertaining to the sale of collateral by a secured creditor. *See* Ala. Code §§ 7-9-204, -9A-625; *Cramton v. Altus Bank*, 597 So. 2d 902 (Ala. 1992). These sources are not remotely on point, as they do not discuss overreaching as a cause of action, but rather, as a means of regulating the sale of collateral. Finally, the Carters claim that the case of *Bankers &*

*Shippers Ins. Co. v. Blackwell*, 51 So. 2d 498 (Ala. 1951), supports their view. That case is not on point for a variety of reasons, most significantly because the *Blackwell* court used the term "overreaching" to describe the policy behind the federal Motor Carriers Act of Congress, not to describe a cause of action. *See id.* at 505-06.

In short, the Carters cite no authority that persuades the court that a cause of action for overreaching exists in Alabama. Accordingly, Count 1 is due to be dismissed.

B.   **Count 3: Fraud in the Inducement**

The Carters contend that Countrywide is liable to them on the ground of fraud in the inducement by falsely convincing the Carters that the Carters could afford to repay a loan. This claim is due to be dismissed because it is barred by the statute of limitations.

In Alabama, the statute of limitations for fraud is two years. *McGowan v. Chrysler Corp.*, 631 So. 2d 842, 845 (Ala. 1993). Additionally, the statute of limitations does not begin running on a fraud claim until a plaintiff discovers facts indicating the existence of fraud. *Henson v. Celtic Life Ins. Co.*, 621 So. 2d 1268, 1274 (Ala. 1993).

In this case, the Carters did not file their Complaint in time to satisfy the statute of limitations. Even if the Carters did not know that Countrywide "fraudulently" told them they could afford their loan, the latest possible date that the Carters could have discovered this "fraud" was on April 26, 2006, when they filed for bankruptcy. Because this date is more than two years prior to the date this case was filed, Count 3 is due to be dismissed.

C.   **Counts 4, 5, and 6: Practicing Law Without a License, Unlawful Practice of Law, and Unlawful Conversion**

The Carters conceded Counts 4, 5, and 6. (Pls.' Resp. to Def.'s Mot. to Dismiss at 8-9.) Accordingly, Counts 4, 5, and 6 are due to be dismissed.

### D.      Counts 7, 8, and 9: Wrongful Eviction, Fraud, and Outrageous Conduct

Counts 7, 8, and 9 are derivative of Counts 4 and 5. Because the Carters conceded Counts 4 and 5, (*id.*), Counts 7, 8, and 9 are due to be dismissed.

First, in Count 7, the Carters contend that Countrywide is liable for "wrongful eviction" because (1) Countrywide's mortgage on the Carters' home was void due to practicing law without a license or unlawful practice of law (Compl. ¶¶ 65-74, 81); (2) "demanding possession [of the Carters' home] in accordance with an unlawful and/or void mortgage;" (Compl. ¶ 81) and (3) "[t]he mortgage being void the Defendants had to first obtain a judgment on the Note signed by the Defendants and then were required to follow the laws of the State of Alabama for the enforcement a [sic] judgment . . . [and t]he Defendants did not [follow this procedure]" (Compl. ¶ 82). These allegations rest on the assumption that Countrywide's mortgage was void, and the Carters' only allegations that the mortgage is void are based on theories the Carters conceded in Counts 4 and 5. In short, because Count 7 is derivative of a claim the Carters conceded, Count 7 is due to be dismissed.

Similarly, Counts 8 and 9 allege that Countrywide committed both fraud and outrageous conduct by misrepresenting to the United States Bankruptcy Court that it had a valid mortgage, when the mortgage was in fact void. (Compl. ¶¶ 84, 87.) Because the Carters make no allegations in their Complaint for why the mortgage is void besides the allegations in Counts 4 and 5, and the Carters have conceded these Counts, Counts 8 and 9 are due to be dismissed.

In sum, Counts 7, 8, and 9 are all derivative of Counts 4 and 5. As the Carters have conceded Counts 4 and 5, Counts 7, 8, and 9 are due to be dismissed.

**E.     Counts 12 and 13: Tort of Outrageous Conduct and Misuse of Public Funds**

In Counts 12 and 13, the Carters contend that Countrywide is liable for outrageous conduct and misusing public funds. Countrywide, as well as the court, does not understand the basis of the Carters' allegations in these counts.

Count 12, a claim for outrageous conduct, alleges that (1) Countrywide was "given and/or loaned public funds from the United States Government for the purpose of aiding those in the Plaintiffs [sic] position" (Compl. ¶ 96); and (2) Countrywide did not use the "public funds for the exclusive purpose set forth by the United States Government" (Compl. ¶ 97). Count 13 makes nearly identical allegations, but as a cause of action for "misuse of public funds." (Compl. ¶¶ 100-04.)

The court cannot determine what government program the Carters are referring to. The Complaint does not cite a statute or provide any hints that identify the program. In the Carters' response brief, they refer to a "Hope Referral Plan" and a "bailout" plan. (Pls.' Resp. to Def.'s Mot. to Dismiss at 10.) It is unclear what "bailout" plan the Carters are referring to, and the court is not aware of a federal government program called the "Hope Referral Plan," or a similar name, that existed during the time period that the Carters alleged Countrywide utilized this government program. Because the court cannot identify the basis of the Carters' causes of action in Counts 12 and 13, the court will dismiss these claims without prejudice so that the Carters can

replead, if they choose to do so, in a manner that gives the court and Countrywide notice of the Carters' claims.

The Carters contend that their failure to identify the plan should be excused because they "have not had an opportunity to do any discover [sic] in regards to the 'bailout' plan," (*id.* at 11) and want to have the opportunity to engage in discovery so that they can formulate a cause of action. The court will not grant the Carters the right to conduct discovery on this issue in advance of proper pleading. Discovery should not be necessary for a plaintiff to state a cause of action. One of the principal justifications behind a Rule 12(b)(6) motion to dismiss is that it allows a defendant to end meritless claims against it without having to go through the costly process of discovery. The Carters may utilize discovery on this claim if they can state a valid cause of action against Countrywide. *See Twombly*, 550 U.S. at 559 ("It is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process through 'careful case management,' given the common lament that the success of judicial supervision in checking discovery abuse has been on the modest side.").

F.      **Count 10: Fraud**

In Count 10, the Carters contend that Countrywide is liable to them for fraud. Countrywide responds that this claim should be dismissed because (1) the Carters have failed to state a claim for fraud; and (2) the Carters' fraud claim is barred by the statute of limitations. Count 10 is due to be dismissed for failing to state a claim.

To state a claim for fraud, a plaintiff must allege "(1) a false representation, (2) concerning a material existing fact, (3) reliance by plaintiff upon that false representation, and

(4) damage to plaintiff as a proximate result." *Webb v. Renfrow*, 453 So. 2d 724, 727 (Ala. 1984) (citing Ala. Code § 6-5-101; *Int'l Resorts, Inc. v. Lambert*, 350 So. 2d 391 (Ala. 1977)). The Alabama Supreme Court has emphasized that a claim for fraud is not actionable unless the *plaintiff himself* relies on the alleged false representation. *Delta Health Grp., Inc. v. Stafford*, 887 So. 2d 887, 899 (Ala. 2004).

In this case, the Carters failed to allege that they relied on Countrywide's alleged false representation. The Carters alleged that (1) Countrywide falsely represented to the Bankruptcy Court that the Carters failed to make a series of payments on their loan (Compl. ¶ 90); and (2) the Bankruptcy Court relied on this misrepresentation, to the Carters' detriment (Compl. ¶ 91). While the Carters alleged reliance *by the Bankruptcy Court*, they failed to allege that they relied on Countrywide's alleged false representations. *See Stafford*, 887 So. 2d at 899 ("In this case, Stafford does not argue that he reasonably relied . . . Stafford argues that Lumbermens reasonably relied upon false representations Delta Health made to Lumbermens and that Lumbermens' reliance proximately caused Stafford's damage . . . . [A cause of action for fraud requires that] the plaintiff, in fact, has relied on the defendant's misrepresentation, even though the misrepresentation was made to another party.").

In sum, because fraud is not actionable unless the plaintiff himself relies on the false representations, and the Carters did not allege that, or how, they reasonably relied on Countrywide's alleged false representations to the Bankruptcy Court, Count 10 is due to be dismissed.

Furthermore, under the allegations of the Complaint, these alleged misrepresentations were made on or about April 26, 2006, and the Count alleges no facts that would have extended the statute of limitations more than two years from that date.

The court will dismiss this Count without prejudice, to allow Plaintiffs an opportunity to amend this claim, if they wish to do so and can, within the requirements of Rule 11, *Federal Rules of Civil Procedure,* to include allegation of facts showing how they reasonably relied on the alleged misrepresentations and why the two year statute of limitations has not run on the claim.

**G.     Counts 2 and 11: Outrageous Conduct**

The Carters contend in Counts 2 and 11 that Countrywide is liable to them under the tort of outrageous conduct. In Count 2, the Carters contend that Countrywide committed outrageous conduct by inducing the Carters to sign up for an unfair loan with Countrywide, in an amount exceeding what was then owed, but below the appraised value of the house, knowing that the Carters would not be able to make the payments, so that Countrywide could eventually foreclose on the Carters' home and profit further thereby. In Count 11, the Carters contend that Countrywide committed outrageous conduct by lying to the Bankruptcy Court so that it could foreclose on the Carters' home. In each Count, the Carters allege that they suffered emotional distress as a result of Countrywide's actions. Countrywide argues that both claims should be dismissed because they (1) fail to state a plausible claim for outrageous conduct; and (2) are barred by the statute of limitations. These claims are not barred by the statute of limitations,

however, they are due to be dismissed without prejudice and with the right to replead, on the ground that they fail to state a plausible claim for outrageous conduct.

1. *Statute of Limitations*

The court cannot conclude that Counts 2 and 11 are barred by the statute of limitations. The statute of limitations for outrageous conduct in Alabama is two years. However, outrageous conduct has been termed a "continuous tort" by the Alabama Supreme Court. *Continental Cas. Ins. Co. v. McDonald*, 567 So. 2d 1208, 1215 (Ala. 1990). Under the continuous tort doctrine, if a plaintiff alleges that a defendant has engaged in repeated tortious conduct that has repeatedly injured a plaintiff, the statute of limitations will not begin to run until the date of the last injury suffered by the plaintiff. *Id.*

In this case, construing the Complaint in the Carters' favor and considering the allegations of Counts 2 and 11 as a whole, Countrywide engaged in repeated "tortious" conduct by (1) inducing the Carters to sign up for an unfair loan in 2004 (Compl. ¶ 14); (2) forcing them to purchase expensive insurance that made it more difficult for them to afford their loan (Compl. ¶ 16); and (3) lying to the bankruptcy court about the Carters' missed payments in 2006 (Compl. ¶¶ 19-21). All of this conduct led to a foreclosure sale of the Carters' home in May 2009 (Compl. ¶ 38), and the Carters' related emotional suffering. In other words, the "last injury" to the Carters suffered allegedly occurred in 2009, less than two years before they filed this suit.

Reading the Complaint in the Carters' favor, as this court is required to do at the motion to dismiss stage, this court cannot conclude that the Counts 2 and 11 are barred by the statute of limitations. However, the above analysis assumes that the Carters' allegations actually state a

claim for outrageous conduct.[3] The court now turns to the issue of whether the Carters have actually stated a claim for outrageous conduct that can survive Countrywide's Motion to Dismiss.

      2.     *Stating a Claim for Outrageous Conduct*

To state a claim of outrageous conduct, also known as "outrage," or, "intentional infliction of emotional distress," a plaintiff must show that (1) "the defendant either intended to inflict emotional distress, or knew or should have known that emotional distress was likely to result from its conduct;" (2) "the defendant's conduct was extreme and outrageous;" and (3) "the defendant's conduct caused emotional distress so severe that no reasonable person could be expected to endure it." *Jackson v. Ala. Power Co.*, 630 So. 2d 439, 440 (Ala. 1993) (citing *Am. Road Serv. Co. v. Inmon*, 394 So. 2d 361 (Ala. 1980)). The Alabama Supreme Court has emphasized that outrageous conduct is only actionable when conduct is extreme, meaning "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Travelers Indem. Co. of Ill. v. Griner*, 809 So. 2d 808, 810 (Ala. 2001) (quoting *Am. Road Serv. Co. v. Inmon*, 394 So. 2d 361, 365 (Ala. 1980)) (citations omitted).

---

[3] Because the court will dismiss Counts 2 and 11 without prejudice, the Carters will have an opportunity to replead. If they satisfactorily replead their outrageous conduct claims in a manner consistent with the statute of limitations analysis above, then their claims will not be barred by the statute of limitations. However, if the Carters' repleading differs in that if they do not adequately allege a continuous course of conduct that included an injury within two years of the date they filed this case, Counts 2 and/or 11 could still be dismissed on statute of limitations grounds.

Alabama courts deem outrageous conduct a "'very limited cause of action that is available only in the most egregious circumstances,'" *Morgan v. N. Miss. Med. Ctr.*, 458 F. Supp. 2d 1341, 1358 (S.D. Ala. 2006) (quoting *Thomas v. BSE Indus. Contractors, Inc.*, 624 So. 2d 1041, 1044 (Ala. 1993)), and the Alabama Supreme Court has held that "in a large majority of the outrage cases reviewed . . . no jury question was presented." *Thomas*, 624 So. 2d at 1044. In fact, the Alabama Supreme Court has recognized an outrageous conduct claim with regard to only (1) wrongful conduct in the context of family burials; (2) two cases where insurance agents employed heavy-handed, barbaric means in attempting to coerce the insured into settling an insurance claim; (3) a case involving egregious sexual harassment; and (4) a case involving a sexual assault on a minor. *Thomas v. Williams*, 21 So. 3d 1234, 1238-39 (Ala. Civ. App. 2008) (citing cases).

### 3. *Failure to State a Claim in Count 2*

The Carters' Complaint does not present a plausible outrageous conduct claim in Count 2. Count 2 contends that Countrywide should be liable for outrageous conduct because (1) Countrywide gave Plaintiffs a larger loan than Plaintiffs needed; (2) based on an evaluation of the Carters' credit report, Countrywide "knew or should have reasonably known" that the Carters could not repay the loan; (3) Countrywide could have made "$20,000.00 or more if they had to foreclose on the Plaintiffs' home;" (4) Countrywide encouraged the Carters to enter into a loan which Countrywide knew or should have known that the Carters could not fulfill; and (5) the Carters suffered severe emotional distress after losing their home to foreclosure. (Compl. ¶¶ 51-52, 54-57, 58.)

14

The facts alleged by the Carters, which this court must take as true and construe in the Carters' favor, suggest that Countrywide knew or should have known that the Carters were vulnerable, but still wrote a loan contract that they knew would lead to the Carters' default and would allow Countrywide to repossess the Carters' house at a profit.  Nevertheless, the Carters also allege that they voluntarily asked Countrywide for a loan and agreed to the terms of the contract.  In short, the crux of Count 2 is a contractual unconscionability theory: that unfair negotiations between parties of unequal bargaining ability and sophistication led to unfair contractual results.

Contractual unconscionability is not the same thing as outrageous conduct.  An unfair contract, or even a contract with misrepresentations, is not "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *See Am. Road Serv. Co. v. Inmon*, 394 So. 2d 361, 365 (Ala. 1980); *see also Harris v. McDavid*, 553 So. 2d 567, 570 (Ala. 1989) (dismissing woman's outrageous conduct claim against man despite the fact that man enticed woman to leave her husband and move in with him so they could be married, impregnated her and convinced her to have an abortion, and then informed her that he was going to leave her and end their business and personal relationships); *Love v. Townsend Ford, Inc.*, 623 So. 2d 1153, 1156 (Ala. 1993) (affirming summary judgment in favor of defendant car dealer on outrageous conduct claim, which was uncontested on appeal, despite plaintiff car buyer's claims that salesman misrepresented to her that if she bought a car, the salesman would make payments on it, pay off her personal loan, and all future maintenance on the car would be free).

Moreover, the Carters make only a conclusory allegation that they suffered emotional distress, by stating that they suffered "emotional pain and suffering, [and] depression." (Compl. ¶ 91.) Because one of the elements of outrageous conduct is "emotional distress so severe that no reasonable person could be expected to endure it," *Jackson*, 630 So. 2d at 440, the Carters cannot state a claim for outrageous conduct simply by making conclusory allegations as to this element. *See Twombly*, 550 U.S. at 555.

In short, the conduct alleged by the Carters in Count 2 does not state a claim for outrageous conduct. As a result, Count 2 is due to be dismissed, but without prejudice to repleading.

### 4. *Failure to State a Claim in Count 11*

The Carters' Complaint does not state a plausible outrageous conduct claim in Count 11. In Count 11, the Carters contend that Countrywide should be liable for outrageous conduct because Countrywide falsely indicated to the Bankruptcy Court that the Carters did not make payments for a series of months, which led to foreclosure on the Carters' home. (Compl. ¶ 93.) The Carters further allege that they have receipts which prove they made the payments in question. (Compl. ¶ 21.) The Carters do not allege whether they challenged Countrywide's petition to the Bankruptcy Court that alleged that the Carters had missed payments, if they did not why not, or if they did, how they did.

In sum, Count 11 fails to plausibly allege an outrageous conduct claim. Accordingly, Count 11 is due to be dismissed, with leave to replead.

## V.  CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Countrywide's Motion to Dismiss (Doc. #4) is GRANTED as to all Counts.  Counts 1, 3, 4, 5, 6, 7, 8, and 9 are dismissed WITH PREJUDICE.  Counts 2, 10, 11, 12, and 13 are dismissed WITHOUT PREJUDICE, and with leave to replead, if appropriate.

Any repleading as to these claims must be by the filing of an Amended Complaint and must be filed **no later than November 15, 2010**.  Any Amended Complaint must be complete in itself, and may not incorporate by reference any allegations of the original Complaint, in accordance with Local Rule 15.1.  It appears that the Plaintiffs are attempting to allege a continuing course of conduct as being outrageous, rather than separate actions standing alone, and, if so, this may be done in a single count based on outrageous conduct.

The court is not suggesting that the Plaintiffs should file an Amended Complaint, or that, if they do, an Amended Complaint will withstand a new Motion to Dismiss.  The Plaintiffs are merely being given an opportunity to do so, if they so choose.

Done this 28th day of October, 2010.

/s/ W. Harold Albritton
W. HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE